UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIPP K. SAUD,<br><br>                  Plaintiff,<br><br>      v.<br><br>STATE OF CALIFORNIA, DEPARTMENT OF HEALTH CARE SERVICES,<br><br>                  Defendant. | No.  2:14-cv-2536 GEB AC<br><br><br>ORDER |

    Plaintiff moves to compel the production of 33 emails that defendant has withheld under a claim of attorney/client privilege.  The motion was referred to the undersigned by E.D. Cal. R. 302(c)(1).  The matter came on for hearing on May 11, 2016 before the undersigned.

    As discussed below, the privilege log provided by defendant was inadequate for the court to determine whether the withheld documents were in fact privileged.  However, the approaching close of discovery counseled against spending the time required to order defendant to produce a proper privilege log.  Accordingly, rather than simply ordering the documents produced, the court reviewed the documents in camera.

    For the reasons set forth below, the motion will be granted in part and denied in part.

### I. ALLEGATIONS OF THE COMPLAINT

    This is an employment discrimination case.  Plaintiff is an attorney working at the

1

California Department of Health Care Services ("DHCS").  He alleges that he was passed over for promotion because of his gender, national origin and religion.  Plaintiff occupied a limited term Attorney III position on the Mental Health and Substance Use Disorder ("MHSUD") team at DHCS.  Second Amended Complaint ("Complaint") (ECF No. 22) ¶ 7.  His supervisor, Lisa Velazquez, declined to transition plaintiff to a permanent position on the team, even though it was standard practice to do so.  Id. ¶ 11.  Plaintiff applied for several positions but was rejected each time for reasons he claims are discriminatory.  Chief Counsel Douglas Press was the selecting official or on the interview panel for these job applications.  As a result of the non-transition and the non-selections, plaintiff was demoted to an Attorney I position.  He filed a grievance, and allegedly was retaliated against for filing the grievance.

## II.  THE DISCOVERY DISPUTE

"At the outset of the case, Plaintiff and Defendant exchanged written discovery.  On July 28, 2015, Defendant sent the privilege log at issue to Plaintiff in response to discovery requests from March, 2015."  Joint Statement (ECF No. 25) at 4.  The privilege log is at ECF No. 25-3, and asserts "Attorney/Client" privilege for the 33 listed emails.

The emails are variously authored by Chief Counsel Doug Press, Assistant Chief Counsel Kara Read-Spangler, and Assistant Chief Counsel Denise Ackerman.  The recipients are those attorneys (in fact, two e-mails are from Press to himself), and others whom defendant says are "need-to-know" personnel charged with carrying out the attorneys' advice.  Apparently to show that it is not stonewalling, defendant asserts (without objection from plaintiff) that "[h]undreds of e-mails, including, some to, from, and between Chief Counsel Doug Press, Assistant Chief Counsel Kara Read-Spangler, and others within the Department, including other attorneys and those who supervise Plaintiff, have been produced un-redacted."  JS at 10.[1]

////

---

[1] The undersigned notes that the parties did not comply with Local Rule 251(c)'s requirement that "Each specific interrogatory, deposition question or other item objected to, or concerning which a protective order is sought, and the objection thereto, shall be reproduced in full."  The undersigned will proceed to rule on the motion, however, because in this case, it is clear exactly what the discovery dispute is about, and the Privilege Log is reproduced in full.

III.  MEET AND CONFER

The parties met and conferred, to no avail.

IV.  ATTORNEY/CLIENT PRIVILEGE

A.  Arguments

The issue here is that the people who made the challenged employment decisions were attorneys, and plaintiff wants to see their communications about those decisions.  Defendant declines to produce the e-mails because, it says, they were written in connection with the advice being given by the lawyers to their client, DHCS.  Plaintiff argues that defendant cannot claim privilege just because the decision-makers are lawyers.  He argues that the e-mails were business emails, and were not providing legal advice to a client.

B.  Analysis

1.  The federal law of privilege applies

"Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."  Agster v. Maricopa Cty., 422 F.3d 836, 839 (9th Cir. 2005); United States v. Margolis (Matter of Fischel) ("Fischel"), 557 F.2d 209, 211 (9th Cir. 1977) (regarding the attorney/client privilege, "[a]t the outset we note that federal, not state, law governs our decision").  Nevertheless, plaintiff relies entirely on California statutes and California cases applying California's law of privilege.  Defendant also cites California cases, but it principally relies upon United States v. ChevronTexaco Corp., 241 F. Supp. 2d 1065, 1075 (N.D. Cal. 2002), which, in a thorough and well-reasoned opinion, applies the federal law of privilege to a situation involving in-house counsel.

2.  The attorney/client privilege

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures."  In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992) (quotation marks and citations omitted).  "The rationale for the rule is to encourage clients to confide fully in their attorneys without fear of future disclosure of such confidences.  This in turn will enable attorneys to render more complete and competent legal advise.  The purpose of the privilege is to

3

protect and foster the client's freedom of expression. It is not to permit an attorney to conduct his client's business affairs in secret." Fischel, 557 F.2d at 211 (citations omitted).

Although the privilege protects communications seeking legal advice from in-house counsel, the matter gets complicated by the fact that in-house counsel may play different roles within their company, some of which are not necessarily related to the provision of legal advice.

> [U]nlike outside counsel, in-house attorneys can serve multiple functions within the corporation. In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities. Accordingly, communications involving in-house counsel might well pertain to business rather than legal matters. The privilege does not protect an attorney's business advice. Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys. Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel.

ChevronTexaco, 241 F. Supp. 2d at 1076 (citations omitted). In this case, in-house counsel were involved in making the challenged employment decisions.

### 3. The burden of establishing the applicability of the privilege

"The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications. . . . [T]he party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold." In re Grand Jury Investigation, 974 F.2d 1068, 1070-71 (9th Cir. 1992) (citations and footnotes omitted). To meet this burden, the objecting party may not rely upon "generalized, boilerplate objection[s]." Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005), cert. denied, 546 U.S. 939 (2005).

Instead, the objecting party must produce a privilege log that "describe[s] the nature of the documents" being withheld with enough information to "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); Perry v. Schwarzenegger, 591 F.3d 1126, 1133 n.1 (9th Cir. 2009) (after noting that he district court had observed that an objecting party "had failed to produce a privilege log required by Federal Rule of Civil Procedure 26(b)(5)(A)(ii)," the Ninth Circuit agreed that "some form of a privilege log is required").

> With respect to internal communications involving in-house counsel, Chevron [the proponent of the privilege] must make a "clear showing" that the "speaker" made the communications for the purpose of obtaining or providing legal advice. In re Sealed Case, 737 F.2d 94 (D.C. Cir. 1984). In order to show that a communication relates to *legal* advice, the proponent of the privilege must demonstrate that the "primary purpose" of the communication was securing legal advice. Extending protection to communications primarily and sufficiently animated by some other purpose would not be necessary to encourage forthright disclosures by clients to lawyers – so such communications should not be privileged.

ChevronTexaco, 241 F. Supp. 2d at 1076 (one citation omitted).

### 4. In Camera Review

Defendant's privilege log is not sufficiently detailed to enable plaintiff or the court to determine whether the underlying documents are protected by the attorney/client privilege. According to ChevronTexaco, "communications between a corporation and its outside counsel are presumed to be made for the purpose of seeking *legal* advice." ChevronTexaco, 241 F. Supp. 2d at 1076. But that presumption does not apply to communications involving only in-house counsel and/or non-legal personnel. Id.

Here, the privilege log provides little information other than authorship or receipt of the emails by in-house counsel. The descriptions of the documents are too brief to permit determination whether they involve legal advice:

- Email re: grievance
- Email re: response to grievance
- Email: Confidential issue
- Email: Response to Philip Saud
- Email: Posting
- Email: Question
- Email: Response to Philip Saud Grievance
- Email: Grievance Review Level II
- Email: Philipp Saud MSA
- Email: PRA Request
- Interview for Attorney III
- PS federal court complaint

None of these descriptions facially demonstrates that the communication was protected by the attorney/client privilege. Even the last four, entitled "PS federal court complaint," which

5

involved emails between Press and Reed-Spangler (both lawyers), could simply be emails stating that a complaint was received.  Even if the email contains a substantive communication, it is not necessarily protected by the privilege.

The undersigned accordingly ordered defendant to submit the documents for in camera review.  That review shows that most of the documents are protected by the attorney/client privilege.  They involve defendant's lawyers providing legal advice to their clients, or the clients requesting legal advice from the lawyers.

However, a more detailed privilege log would have made that obvious to plaintiff and to the undersigned, and thus could have avoided this motion and this in camera review.  For example, if defendant had identified No. 4 (DHCS 3346-50) as containing a legal analysis of plaintiff's grievance, rather than simply "Email re: response to grievance," plaintiff could easily determine that the privilege applied.  Even if plaintiff had made this motion in spite of such a detailed description, the undersigned could have made her ruling without the need for an in camera review.[2]

Indeed, if defendant had simply included the "Subject" line of some of these emails, it would have been plain to anyone reading the privilege log that the document was protected by the attorney/client privilege.  For example, the subject line of No. 5 (DHCS 3351-56) is "Draft – Response to Philip Saud Grievance.docx."  Such a document, coming from a lawyer to his client, is plainly privileged (or at least presumptively so), without the need for motion practice and in camera review.[3]

### V.  CONCLUSION

Having reviewed the submitted documents in camera, IT IS HEREBY ORDERED that plaintiff's Motion To Compel (ECF No. 24) is GRANTED in part and DENIED in part, as follows:

---

[2] Defendant compounded its error by producing the documents for in camera review as one single pile of un-numbered and undifferentiated (although Bates-stamped) documents, instead of giving each document a simple sequential number, and segregating each document by stapling it or by some other means.

[3] The same is true for Nos. 15 (DHCS 3383-87), 19 (DHCS 3399-3404), 20 (DHCS 3405), 21 (DHCS 3406-07) and 22 (DHCS 3408-09).

1. The motion to compel is GRANTED as to the following seven (7) documents, which shall be produced to plaintiff no later than 3 days from the date of this order:

> No. 1 (DHCS 3329-41)
> No. 12 (DHCS 3374)
> No. 23 (DHCS 3411-16)
> No. 25 (DHCS 3417)
> No. 26 (DHCS 3418)
> No. 27 (DHCS 3419-20)
> No. 30 (DHCS 3439)

2. The motion to compel is DENIED as to all other documents in the privilege log, and defendant need not produce those documents.

DATED: May 18, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE